UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SUSAN D. GOODE, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 06-65-P-S |
| | ) | |
| SIGNET ELECTRONIC SYSTEMS, INC., | ) ) | |
| | ) | |
|     Defendant | ) | |

*RECOMMENDED DECISION ON MOTION TO DISMISS*

The defendant, Signet Electronic Systems, Inc., moves to dismiss all claims asserted against it by the plaintiff in this action that was removed from the Maine Superior Court (Cumberland County). Defendant's Motion to Dismiss ("Motion") (Docket No. 5) at 1.[1]  I recommend that the court grant the motion in part.

**I. Applicable Legal Standard**

The motion invokes Fed. R. Civ. P. 12(b)(6), which provides for dismissal for failure to state a claim upon which relief may be granted. *Id*. at 3.  "[I]n ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff[]." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would not be unable to recover under any set of

---

[1] The plaintiff has requested oral argument on the motion.  Plaintiffs' [sic] Motion [sic] in Opposition to Defendants' [sic] Motion to Dismiss, etc. ("Opposition") (Docket No. 9) at 10.  Inasmuch as the parties' written submissions provide a sufficient basis on which to
(*continued on next page*)

1

facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

## II.  Factual Background

The complaint makes the following relevant factual allegations. The defendant is a communications systems integration company with a principal place of business in Scarborough, Maine. Complaint (Attachment 4 to Docket No. 1) ¶ 1. The plaintiff began her employment with the defendant in December 2003. *Id*. ¶ 6. She executed on December 16, 2003 an employment agreement which included a compensation package that provided for commissions to be paid up to 30 days after the termination of her employment. *Id*. ¶¶ 7-8. She worked as an account executive, responsible for generating and closing sales of Verizon products and services. *Id*. ¶¶ 9-10. The job involved prospecting for leads or receiving leads from a leads list, visiting customers and prospective customers to sell Verizon products and services and obtaining commitments to purchase Verizon products and services. *Id*. ¶ 10. The servicing of accounts and the collecting of funds were not part of the plaintiff's job responsibilities. *Id*. ¶ 15.

The plaintiff performed her job satisfactorily during her first year of employment. *Id.*¶ 11. On November 2, 2004 the plaintiff was provided with a new sales compensation plan that superseded all previous plans for sales generated on or after November 1, 2004. *Id*. ¶ 12. This plan stated that "commissions will only be paid on the acquisition value of any long distance services." *Id*. ¶ 13. It did not refer to commissions being paid upon receipt of payment from Verizon. *Id*. The plaintiff earned commissions for the following accounts prior to her termination of employment: MEMIC, Pape Chevrolet, Pine Tree Council of Boy Scouts, Gorham Savings, Pine Tree Legal and Camden National Bank. *Id*. ¶ 14. She generated and/or closed the sale of these accounts. *Id*.

---

decide the motion, the request is denied.

On August 1, 2005 the plaintiff met with Lawrence Caruso, the defendant's Director of Sales and Marketing and her direct supervisor, to evaluate her performance. *Id*. ¶¶ 3, 16.  This was the first formal evaluation of her performance since she began working for the defendant. *Id*. ¶ 16.  On August 2, 2005 the plaintiff resigned, signing a release after Caruso stated that she would receive a severance payment. *Id*. ¶ 17.  She was told that failure to sign the release would result in a negative reference from the defendant. *Id*. ¶ 18.  Also on August 2, 2005 the plaintiff made a demand for wages owed in a letter to Caruso in which she outlined the commissions she had earned that had not been paid by the defendant. *Id***. ¶ 20.  Those commissions totaled at least $34,213.33. *Id*.  The defendant has not paid those commissions to the plaintiff. *Id*. ¶ 21.  Other account executives were paid commissions earned upon termination. *Id*. ¶ 25.

In an August 2, 2005 letter to the plaintiff, Caruso acknowledged that he would investigate the tardy MEMIC payment but did not discuss any other commissions that the plaintiff claimed were owed. *Id*. ¶ 22.  On January 10, 2006 the plaintiff reiterated her demand for wages owed in a letter to Caruso. *Id.* ¶ 24.  The defendant received that letter on January 12, 2006. *Id*. ¶ 27.  The defendant has not paid the plaintiff her claimed unpaid wages. *Id*. ¶ 28.

The sales compensation plan in effect after November 1, 2004 stated that "if the Representative is not longer employed for any reason, all unpaid commissions and bonuses will be forfeited and no longer payable to the Representative." *Id*. ¶ 41.

### III. Discussion

The complaint asserts claims for violation of 26 M.R.S.A. §§ 621-A, 626 and 629.  Complaint ¶¶ 30-45.  The defendant contends that it has an affirmative defense applicable to all of these claims which is the general release executed by the plaintiff.  Motion at 4.[2]  That release is attached to and

---

[2] The plaintiff erroneously asserts that the defendant "has failed to move to dismiss [her] claim under 26 M.R.S.A. § 629." Opposition (*continued on next page*)

incorporated into the complaint, Complaint ¶¶ 17-19 & Exh. 3, the authenticity of which is not challenged by the plaintiff, making it proper for this court to consider the release in connection with the pending motion, *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001). The same is true of the other documents relevant to consideration of the motion to dismiss.

The release provides:

> For good consideration and in consideration of the mutual promises hereby made, Susan Goode (Employee) and SIGNET Electronic Systems, Inc. (Company) do hereby mutually and reciprocally release and discharge one and the other from all contracts, agreements (excepting the employment, non-competition and confidentiality agreement), claims, actions, commissions, demands both in law and in equity, rights, benefits (excepting those benefits that survive by law), and suits of every nature and description arising from the employment relationship previously existing between Company and Employee.
>
> This release shall be binding upon and inure to the benefit of the parties, their successors, assigns, personal representatives and heirs, and without limiting the generality of the foregoing, officers, directors, employees and agents of the Company.

Complaint, Exh. 3. In the alternative, the defendant asserts that the employment agreement executed by the plaintiff in December 2003 precludes the payment of commissions under the circumstances. Motion at 7-8. Finally, it argues that 26 M.R.S.A. § 621-A does not apply to terminated employees. *Id*. at 8-9.

### A. Release

By its terms, the release appears to waive all of the plaintiff's stated claims. The plaintiff first contends that the November 2, 2004 sales compensation plan, which she calls "the Final Employment Agreement," "dictates that [she] be paid promptly upon the closing of a sale." Opposition at 3. She must also be arguing, therefore, that the terms of the sales compensation plan cannot be waived by the

---

at 10.

release. She offers no reason why this should be so. The release, on its face, waives all claims that could be raised by the plaintiff, including a claim that the second sales compensation plan should be so interpreted. It is accordingly unnecessary to reach the plaintiff's argument about how the second sales compensation plan should be interpreted.

The plaintiff next contends that the reference to "the employment, non-competition and confidentiality agreement" in the release is ambiguous, so that "there still exists a question of fact as to what . . . expressly survived the Release." *Id.* at 4. To the contrary, there is only one document referred to in and attached to the complaint that is entitled "Employment, Non-competition and Confidentiality Agreement." Complaint, Exh. 1. The second line of the title of that document reads "December 2, 2003 – October 31, 2004", *id.* at 1, but it is the only document so named. The document contains provisions that are expressly stated to survive the employee's termination. *E.g.*, Exh. 1 at ¶¶ 7, 12-14. While this document itself might well be construed to be ambiguous, the reference to it in the release cannot be so characterized.

The plaintiff next asserts that an agreement to forfeit the payment of earned commissions is unenforceable under section 626. Opposition at 5. This is so, she argues, because that statute "makes no reference to an employee being able to waive his or her right to unpaid wages." *Id.* The statute provides, in pertinent part:

> An employee leaving employment must be paid in full within a reasonable time after demand . . . provided that any overcompensation may be withheld if authorized . . . and any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee.
> * * *
> For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.
> * * *
> . . . An employer found in violation of this section is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee . . . must include a reasonable rate of interest, an additional amount equal to twice the

>amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

26 M.R.S.A. § 626.[3] The plaintiff points to language in the Maine Law Court's opinion in *Loughran* "constru[ing] narrowly the exception to the broad requirement of payment in full," 651 A.2d at 376, as establishing that release of any claim to wages covered by section 626 is barred, Opposition at 5. However, the quoted language merely construed the specific language in section 626 allowing an employer to withhold overcompensation, loans and advances against future earnings from the amount to be paid within a reasonable time. The language cannot reasonably be stretched to stand as a holding that no claim under section 626 may ever be released. Nor does the Law Court's holding in *Purdy v. Community Telecomms. Corp.*, 663 A.2d 25, 28 (Me. 1995), that an employer may not withhold compensation otherwise due under section 626 while demanding a release from the employee be construed to bar a release of any claim under that section by the employee. To construe section 626 as the plaintiff urges would be to prohibit the release of any statutory entitlements by any party unless the statute at issue specifically provided that it could be waived. There is a dearth of case law on point, and none in Maine. In one reported case, a state wage-claim law was interpreted not to exclude the ability to release such claims, *O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 347-49 (N.D.Ill. 2001) (releases invalid as to claim under federal Fair Labor Standards Act not invalid as to claim under Illinois state wage law in absence of claim of fraud, duress or misrepresentation), but another judge of the same court rejected this conclusion in *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 WL 1403007 (N.D.Ill. Nov. 9, 2001), for reasons that I find persuasive. Like the judge in that case, in the absence of any state case law and in view of the federal case law holding that claims under the Fair Labor Standards Act may not be released, *id*. at *2, I cannot conclude that claims

---

[3] The parties appear to agree that the term "wages" in section 626 includes commissions. Opposition at 4; Defendant's Reply Memorandum in Support of Motion to Dismiss (Docket No. 11) at 3-4; *Community Telecomms. Corp. v. Loughran*, 651 A.2d (*continued on next page*)

under the state statute may be released in any and all circumstances, nor can I comfortably predict that the Maine Law Court would so interpret section 626. The question of the efficacy of the release in this case depends on the circumstances surrounding its execution and accordingly may not appropriately be decided in the context of a motion to dismiss.

While this conclusion makes it unnecessary to consider the plaintiff's remaining arguments with respect to the release, I will address them briefly so that my analysis will be available should the court disagree with my conclusions regarding the preceding argument. The plaintiff's next argument is that her August 2, 2005 letter to Caruso demonstrates that the release does not apply to her allegedly earned commissions because she "expressly demands payment of her earned commissions in accordance with the" 2004 Sales Compensation Plan. Opposition at 6. However, it is basic Maine law that a document created by one party to a contract after the contract is executed cannot serve as evidence of the parties' intent, when the contract itself is unambiguous. *See, e.g., McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me. 1996) (extrinsic evidence to show intent may only be considered once ambiguity is found in contract); *see also Alternative Energy*, 267 F.3d at 34-35 (defining an unambiguous contract under Maine law). The release specifically applies to commissions. Exh. 3.

Contrary to the plaintiff's assertion, Opposition at 6, the fact that Caruso created a memorandum subsequent to the execution of the release in which he stated that the defendant "agrees to review the commission payment to [the plaintiff] on MEMIC only" if Verizon, the client, determined that it missed a payment to the defendant two months before the plaintiff's termination, Exh. 5, does not in any way "make[] clear the fact that the Company did not interpret the general release as having waived claims for commissions Goode earned prior to her resignation." It is not evidence of a "mutual mistake of fact," Opposition at 7, a basis for finding the release to be voidable that is not

373, 376 (Me. 1994).

7

pleaded in the complaint. It demonstrates, at most, that the defendant would have agreed to pay the plaintiff a commission on a payment that should have been received in June 2005 on one of her accounts if the client acknowledged that it had failed to make a payment when due. If that payment had been timely made, the plaintiff would have received her commission well before she signed the release. While the defendant may not have been obligated to make such a payment given the terms of the release, its willingness to consider doing so — although the complaint makes clear that it did not ultimately do so — could neither void the release, *see Sargent v. Coolidge*, 399 A.2d 1333, 1345 (Me. 1979) (mutual mistake of fact makes agreement voidable, not void), nor demonstrate a mistake of fact rendering the release unenforceable, *see generally Nadeau v. Pitman*, 731 A.2d 863, 867 (Me. 1999) (events occurring after execution of contract and not contemplated by parties at time of execution are not mutual mistake rendering contract unenforceable); *Yaffie v. Lawyers Title Ins. Corp.*, 710 A.2d 886, 888 (Me. 1998) (mutual mistake of fact is reciprocal and common to both parties, where each alike labors under same misconception in respect to terms of contract); *Moulton v. Moulton*, 707 A.2d 74, 76 (Me. 1998) (mistake of fact exists when some fact which really exists is unknown or some nonexistent fact is supposed to exist by both parties). Neither of the cases cited by the plaintiff, *Nadeau* and *Miller v. Lentine*, 495 A.2d 1229, 1231 (Me. 1985) (mutual mistake of fact concerns circumstances at time of contract formation, not subsequent developments), Opposition at 7, supports her position. The language of the complaint, construed with the benefit of all reasonable inferences in favor of the plaintiff, simply does not allow the drawing of the conclusion that the parties were laboring under a mutual mistake of fact when they entered into the release.

### B. The December 2003 Agreement

The defendant argues in the alternative that the "plain, unambiguous language of Goode's Employment Agreement preclude[s] her claims for commissions under 26 M.R.S.A. § 626." Motion at

7. The plaintiff does not respond directly to this argument, asserting only that the November 2004 sales compensation plan "clearly supersedes" the December 2003 agreement. Opposition at 9. In fact, the relationship of the sales compensation plan to the Employment, Non-Competition and Confidentiality Agreement of December 2003 is anything but clear.

The defendant relies, Motion at 7, on language in the latter-mentioned document to the effect that "I understand that at the end of my employment, a potential commission will only paid [sic] to me if a customer contract or purchase order has been received, equipment submissions have been approved, profit margins are accurate to the estimate and full payment is received," Exh. 1, ¶ 14. The defendant bases its argument on the undisputed legal provisions that interpretation of an unambiguous contract is a question of law and that the question whether a contract is ambiguous is also a question of law for the court. Motion at 7. However, the Employment, Non-Competition and Confidentiality Agreement cannot reasonably be said to be unambiguous. In large, dark type above the title of the document —and, unlike the title, italicized — after the plaintiff's name, are the dates "December 2, 2003 – October 31, 2004." Exh. 1 at 1. These dates are at best inconsistent with various terms within the body of the document, including the following:

> I understand that I am employed for an indefinite term and that either the Company or I may terminate the employment relationship at any time . . . .
> \* \* \*
> For a period of one year after the termination of my employment with the Company for any reason, I shall not . . . participate in the development of [sic] provision of goods or services provided (or proposed to be provided) by the Company . . . .
>
> For a period of one year after the termination of employment with the Company for any reason, I shall not solicit, induce, attempt to hire, or hire any employee of the Company . . . .
> \* \* \*
> While employed by the Company and thereafter, I shall not, directly or indirectly, use any Confidential Information . . . .
> \* \* \*

> I will, at any time during my employment, or after it terminates, on request of the Company, execute all documents and perform all lawful acts, which the Company considers necessary or advisable . . . .
> * * *
> I understand . . . that my rights and obligations under this Agreement will continue even if I do not sign a Termination Certificate.
> * * *
> My obligations under this Agreement shall survive the termination of my employment with the Company . . . .

Exh. 1, ¶¶ 1, 7(b) & (c), 8, 12, 13, 14. Paragraph 3 of this document refers to "the compensation listed on Schedule A," a copy of which has not been provided to the court and which therefore cannot be compared with the November 2004 sales compensation plan. On the state of the record, dismissal based on the terms of this document is not possible. *See Bisbing v. Maine Med. Ctr.*, 2002 WL 1978903 (Me. Super. June 11, 2002), at *2.

### C. Section 621-A (Count II)

Count II of the complaint alleges that the defendant "failed to make a timely payment of the wages owed, in violation of 26 M.R.S.A. §621-A" "[p]ursuant to Signet's compensation plan." Complaint ¶¶ 37-38. Section 621-A is a lengthy statute. Neither the complaint nor the plaintiff's response to the motion to dismiss identifies which subsection or subsections are at issue here. The defendant takes the position that the statute applies only to employees who are currently employed and not to terminated employees. Motion at 8-9. The plaintiff responds, in full:

> Goode alleges that she was not paid in full all wages owed both after her employment . . . was terminated and while employed. Complaint ¶ 14. Therefore, a valid claim for wages owed under §621-A survives. In the alternative, the claim for these wages is preserved as a result of Goode's numerous §626 demands.

Opposition at 10 (emphasis in original). This response misses the point. The defendant's argument is that the plaintiff does not allege that she made any claim under section 621-A before making such a claim in her complaint and that the statute applies only to claims made while the employee is still

employed. Even if she had alleged in her complaint that she made "numerous §626 demands" before August 2, 2005, the day she resigned — allegations which are not present in the complaint — making a demand under that statute does not constitute making a demand under section 621-A, a distinct statute with a distinct purpose. The portions of section 621-A most likely to be implicated by the plaintiff's complaint as written provide as follows:

> **1. Minimum frequency and full payment.** At regular intervals not to exceed 16 days, every employer must pay in full all wages earned by each employee. Each payment must include all wages earned to within 8 days of the payment date. An employee who is absent from work at a time fixed for payment must be paid on demand after that time.
>
> **2. Regular payment required.** Wages must be paid on an established day or date at regular intervals made known to the employee. When the interval is less than the maximum allowed by subsection 1, the interval may not be increased without written notice to the employee at least 30 days in advance of the increase.

26 M.R.S.A. § 621-A(1) & (2). Construing 26 M.R.S.A. § 626, the basis for the plaintiff's claim in Count I, Complaint ¶34, together with the predecessor of 26 M.R.S.A. § 621-A,[4] the Maine Law Court has held that section 621-A reveals a legislative intent

> to allow a private litigant recourse against an employer for an unpaid wage only if: (1) the employee has been discharged, subsequently demands to be paid, and the employer refuses to do so, *see* 26 M.R.S.A. § 626; or (2) when that employer has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday, *see* 26 M.R.S.A. §§ 621, 626-A.

*In re Wage Payment Litig.*, 759 A.2d at 223 (emphasis omitted). There is no sense in which the complaint may reasonably be construed to allege that the plaintiff is currently employed by the defendant. Accordingly, the defendant is entitled to dismissal of Count II.

---

[4] The language of section 621, later repealed and replaced by section 621-A, did not differ significantly from that quoted above from section 621-A. *In re Wage Payment Litig.*, 759 A.2d 217, 221 n.2 (Me. 2000).

11

### IV.  Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED** as to Count II and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 8th day of June, 2006.

>                    /s/ David M. Cohen
>                    David M. Cohen
>                    United States Magistrate Judge